## State Real Estate Commission v. Barbary

*Morris Chernok*, Deputy Attorney General, for Commonwealth.

*Carl B. Stoner*, for appellants.

LIPSITT, J., April 24, 1968.—This is an appeal by J. Ray Barbary and Ranger Realty Company, Inc. through its president, J. Ray Barbary, from an adjudication and order of the State Real Estate Commission of Pennsylvania dated October 17, 1967, suspending the real estate brokers' licenses of the said J. Ray Barbary and the said company for a period of 11 months.

Pursuant to a citation issued by the Commission upon complaint of Lois Kilby and John J. Wert, Jr., a hearing was scheduled in Harrisburg, Pennsylvania, on January 18, 1967. Because of confusion in the legal representation of respondents, the present appellants, as well as unwillingness on the part of one of the complainants to testify because of the receipt of some satisfaction, the hearing was continued to March 21, 1967, when appellants were represented by counsel and testimony was heard from all parties. The appeal was filed on November 10, 1967, and a supersedeas granted the same day.

The record discloses the following events. Lois Kilby, one of the complainants, using her married name Lois I. Jochim (subsequently the marriage was dissolved and the complainant reverted to her maiden name) signed an agreement on May 11, 1965, to purchase property at 6102 Nassau Road, Harrisburg, Pa., with Ranger Realty Company, Inc., acting as agent for the owner thereof. This agreement provided for a sales price of $13,000, acknowledged receipt of $400 in the form of a note, for "F. H. A." financing of the balance of $12,600, for a return of the deposit if financing was not procured and for settlement to be made on or before August 15, 1965. The agreement was not executed by John J. Wert, Jr., owner of the property, who is the other complainant.

A few days after the date of the above agreement, Mrs. Kilby gave appellants a check in the sum of $1,000 for which she obtained a receipt dated May 17,

1965, for "$400 as down payment and all settlement costs for purchase of 6102 Nassau Road". Complainant Kilby explained that the note referred to in the agreement was intended to serve as a deposit until such time as she could take bonds from her safety deposit box. This note was not returned to her and was in the possession of appellants at the time of the hearing.

Efforts were made to arrange financing. The complainant, Mrs. Kilby, was accompanied by appellant, J. Ray Barbary, to the Advance Mortgage Co., where he gave a check for $53 for the application fee. However, no mortgage commitment was obtained.

On or about August 15, 1965, Mrs. Kilby moved into the house with the understanding that she would pay rent to Mr. Wert, owner of the property, at the rate of $3 per day until settlement could be made which was to take approximately 90 days. Sometime during April 1966, complainants realized the completion of the contract was being delayed too long.

The parties together with Mr. Barbary decided that another agreement was necessary in order to accomplish the sale. This second agreement was entered into on April 12, 1966, and was executed by all parties including Lois Kilby, John J. Wert, Jr., and his wife, Kathryn E. Wert, and by Ranger Realty Company, Inc., through J. R. Barbary. This agreement provided for a sales price of $14,600, acknowledged receipt of $2,920 in the form of cash and notes, for financing in the amount of $11,680, for a return of the deposit if financing was not obtained and for settlement to be made within 30 days from the date thereof.

The increased sales price presumably was intended as a means to acquire sufficient financing. At the time of the execution of the agreement by Mr. Wert, there was a discussion held between Mr. Wert, his attorney and Mr. Barbary, which related to the deposit of $1,000 received by Barbary.

Settlement according to the terms of this second agreement did not take place, but Mrs. Kilby continued to live in the premises until December of 1966. She moved into the property on or about August 15, 1965, but paid no rent until May of 1966 and thereafter she paid rent directly to Mr. Wert's attorney.

Even though settlement did not take place pursuant to the second agreement, appellants did not turn over any part of the $1,000 received by them to either Mr. Wert as rental for the period from August 15, 1965, to May 12, 1966, or to Mrs. Kilby as a refund to her of the difference between the rental due and the original amount of $1,000 paid by her. Mr. Wert stated that the full $1,000 should have been paid to him as rental by May 12, 1966. To acquire the $1,000, Mr. Wert brought suit and took a default judgment against appellants in the sum of $1,000 which was paid on January 12, 1967. It may be noted that this was six days before the first scheduled hearing and the complaint was filed July 28, 1966.

An investigator of the Commonwealth of Pennsylvania testified concerning the inspection of the office of appellants. She stated she had been there one time previous to August 15, 1966, and appellant Barbary did not have entries in a ledger corresponding with the checkbook; she could not determine whether the deposited money was retained or gone and actually the ledger book was blank. Mr. Barbary acknowledged that he did not keep a record. The investigation showed that he merely kept a file relative to this business deal. The file contained the agreement of sale and a group of deposit slips. The checkbook itself had no figures giving any balance. Mr. Barbary had no knowledge of what he had in escrow.

Appellant Barbary testified that Mrs. Kilby demanded the return of the money to her, because she was tired of waiting for the consummation of the

transaction and he received demands from Mr. Wert because he claimed the money was due as rental. He said that he did not know who to pay and was willing to pay the money to Mr. Wert after suit was instituted and a default judgment entered against him.

In the petition for supersedeas appellants set forth a number of exceptions to the adjudication and order of the commission. Only the findings and conclusions are recited herewith which were challenged at the argument before the court en banc. These are as follows:

"6. Respondent did not record deposit properly in escrow books and records.

"7. Respondent was unable to secure financing of property involved and did not return deposit money to Buyer.

"8. Respondent keeps no records.

"9. Respondent had a group of deposit slips but was unable to tell who they belonged to.

"13. Respondent failed to account for money to purchaser or seller.

"15. Respondent failed to give estimated settlement figures to Buyer.

"16. Respondent's records were not kept.

"17. Respondent's records at the hearing, few in number, were made up after investigation by the Commonwealth".

Appellants also excepted to the conclusions of law on the basis that they were based on erroneous findings of fact. Further, it is averred that the conclusions of law were inadequate in that they recited sections of the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as amended, 63 PS §440, without a discussion as to how the particular facts constituted a violation of the law.

Additionally, an objection is directed to the conduct of one member of the commission who during the hear-

ing showed reluctance to accept uncorroborated testimony of Mr. Barbary relative to one aspect of the case.

There appears no doubt from a review of the transcript that appellants actually kept no records and that whatever records were produced at the hearing were made at the suggestion of the investigator after her inspection of the office of the appellants. There are admissions by Mr. Barbary in the notes of testimony that the $1,000 received from Mrs. Kilby was not in his escrow account all the time and that some of it was probably used for something unrelated to the transaction. He did state that he believed that he had a right to use a portion of the money for the mortgage application and for certain repair charges.

In considering the exceptions which are advanced here, it is not deemed necessary to discuss them seriatim. None of the findings is seriously disputed but attempts are made to mitigate the seriousness of the findings. For instance, in connection with the failure to keep a book record of the escrow account, it is urged that the deposit slips which were retained constituted a record and it is argued that of the $1,000 received, $600 was given for settlement costs and not as a down payment, supposedly on the theory that this sum was not to be held in escrow. The failure to return the deposit money to the buyer is explained on the ground that Mr. Barbary did not know to whom to pay the money and it is contended that if he had desired to escape liability, he would not have allowed a judgment by default nor would he have then satisfied the judgment. In reply to another finding, he states he was able to tell to whom the deposit slips in the file belonged because he was able to produce the slip evidencing the $1,000 deposit. On his failure to give estimated settlement figures to the buyer, the explanation is that because financing was not arranged, any settlement figures would only be speculative. Finally, it is main-

tained that the finding of the failure to keep records is only accurate relative to the disbursements from the escrow account, and it is repeated that the files and deposit slips did constitute sufficient records.

The Commissioner of Professional and Occupational Affairs, who sat as a member of the State Real Estate Commission during the hearing at one point, was reluctant to accept the oral testimony of Mr. Barbary relative to the check for $53 which Mr. Barbary stated that he had paid for the mortgage application fee. Because of the insistence that Mr. Barbary produce the check, it is argued that there was prejudice on behalf of this member of the commission against Mr. Barbary. Little weight can be given to this argument as it must be recognized as typical of a request frequently made in judicial proceedings.

The only issue involved here is whether the order and adjudication of the State Real Estate Commission is justified on the basis of the evidence. Beyond question the conclusions of law are sustained by the findings of fact and the findings of fact are supported by substantial evidence. Indeed appellants' principal plea is that even though Barbary may not have kept a proper escrow account or proper ledger, it was merely due to negligence and did not warrant an eleven month suspension. It is argued that only appellants suffered a financial loss and that they did attempt to rectify any wrong toward the parties to the real estate agreement and further, that there was no fraud committed on the part of Mr. Barbary.

Appellants present a request which is not within the scope of authority of a court in an appeal proceeding of this type. Section 10 (a) of the Real Estate Brokers License Act, supra, 63 PS §440 (a), requires an accounting for funds received from others arising out of real estate transactions and to keep funds so received in escrow accounts and to maintain records of

all funds deposited with them. The evidence was sufficient to sustain the findings that the appellants' actions did constitute violations of this Act. Section 44 of the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.44, provides: ". . . the court shall affirm the adjudication unless it shall find . . . that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence".

This court cannot determine if contrary findings could have been made or substitute its judgment as to a proper penalty in the absence of a showing that the administrative agency acted arbitrarily or capriciously and in disregard of the evidence before it: State Real Estate Commission v. Harris, 70 Dauph. 254 (1957), affirmed 184 Pa. Superior Ct. 667 (1957); State Real Estate Commission v. Schlechter, 70 Dauph. 287 (1957).

A final exception raises the question whether the conclusions of law are adequate in that they merely recite sections of the Real Estate Brokers License Act without an adequate and understandable discussion of the law relating thereto and without properly relating the facts to the law. The Administrative Agency Law of June 4, 1945, supra, sec. 34, 71 PS §1710.34, provides as follows: "All adjudications shall be in writing, shall contain findings and the reasons for the adjudication . . ." There may be circumstances in some cases which might require discussion to effect a proper understanding of a decision by an agency. However, here, the findings are clear, albeit some are repetitious, and the references to the findings of fact contained in the conclusions are on point and afford adequate reasons to support those conclusions.

For the reasons set forth herein, we enter the following

ORDER

And now, April 24, 1968, the appeal of J. Ray Barbary and Ranger Realty Company, Inc., from an adjudication and order of the State Real Estate Commission suspending appellants' real estate licenses is dismissed and the action of the said commission is hereby affirmed.